UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT SALATTO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:08cv1071 (MRK) |
| | : | |
| CITY OF MILFORD, KENNETH RAHN, | : | |
| DENNIS BRODERICK, DONALD | : | |
| MCCOLLUM, MACDONALD CO INC, | : | |
| J&A AUTO BODY INC, KEITH MELLO, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF DECISION**

In this civil rights action, brought pursuant to 42 U.S.C. § 1983, Plaintiff Robert Salatto asserts federal and state law claims against numerous defendants, alleging unreasonable search and seizure, false arrest and malicious prosecution, violation of due process, and a *Monell* or failure to train claim. *See* Compl. [doc. # 3]. He also asserts state law claims of abuse of process, negligence, negligent and intentional infliction of emotional distress, and fraud. *See id.*

Pending before the Court are motions for summary judgment filed by Defendants City of Milford ("the City"), Officer Kenneth Rahn, Officer Dennis Broderick, Officer Donald McCollum, Chief Keith Mello, and the MacDonald Co Inc ("TMC") (collectively "Defendants") [doc. # 128]; Defendants J&A Auto Body Inc. ("J&A") [doc. # 129]; and Mr. Salatto [doc. # 130].

For the reasons that follow, J&A's and Defendants' motions are granted as to all federal law claims, Mr. Salatto's motion for summary judgment is denied as to all federal law claims, and the Court declines to exercise supplemental jurisdiction over Mr. Salatto's state law claims.

1

**I.**

This Court applies a familiar standard when resolving a motion for summary judgment. Summary judgment is appropriate only when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" submitted to the Court "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(A); Fed. R. Civ. P. 56(a). A "material fact" is one whose resolution will affect the ultimate determination of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" when the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *See id.*; *see also Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006).

In a motion for summary judgment, the burden is initially on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (quotation marks and citations omitted). In evaluating the moving party's evidence, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir. 2000) (quotation marks omitted). If the moving party meets this burden, the party against whom summary judgment is sought "must come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co.. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quotation marks omitted) (emphasis in original). The plaintiff may not prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts," *id.*, as "'[t]he mere of existence of a scintilla of evidence in support

2

of the [plaintiff's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiff]." *Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004) (quoting *Anderson*, 477 U.S. at 252). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Merely verifying—or contesting—the allegations of the complaint in an affidavit is insufficient to oppose a motion for summary judgment. *See Zigmund v. Foster*, 106 F. Supp. 2d 352, 356 (D. Conn. 2000) (citing cases).

## II.

The facts are taken from the exhibits attached to the three pending motions for summary judgment. *See* Defs.' Mot. for Summ. J. [doc. # 128]; J&A Mot. for Summ. J. [doc. # 129]; Salatto Mot. for Summ. J. [doc. # 130].[1] It is worth noting that Mr. Salatto's 56(a)2 Statement of Facts in

---

[1] Rule 56(a)1 of the *District of Connecticut Local Rules of Civil Procedure* requires that a motion for summary judgment be accompanied by a Local Rule 56(a)1 Statement, which sets forth a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried in separately numbered paragraphs and supported by specific citations to the record. Local Rule 56(a)2 requires that papers opposing a motion for summary judgment include a Local Rule 56(a)2 Statement indicating whether each statement in the moving party's Local Rule 56(a)1 Statement is admitted or denied and providing specific citations to the record along with a section identifying disputed issues of material fact. Mr. Salatto has not complied with either requirement.

In his reply briefs regarding his motion for summary judgment, Mr. Salatto asks the Court to excuse his failure to comply with these rules. He contends that he was unaware of the rules at the time he filed his motion for summary judgment and that he cannot now comply with the rules because he did not retain a copy of his motion.

The Court finds Mr. Salatto's assertions disingenuous. Mr. Salatto states that he gave his motion for summary judgment to prison officials for mailing on April 26, 2011. Defendants filed their motions for summary judgment six days later, on May 2, 2011. Appended to Defendants' motions for summary judgment were copies of the applicable local and federal rules, including the full text of Local Rule 56. Therefore, Mr. Salatto was aware of the requirements for filing a proper motion for summary judgment within one week of mailing his motion. However, he took no action to correct his error for six weeks, and he did not acknowledge his error until Defendants and J&A raised it as a reason to deny his motion for summary judgment.

response to Defendants' 56(a)1 Statement of Facts responds to only a limited number of Defendants' claims and does not cite to any evidence in the record in support of its denials. As Mr. Salatto is a *pro se* plaintiff, the Court has endeavored to ignore this lapse and describe all relevant evidence in this section.

In his affidavit, Kenneth Rahn—who at all times relevant to this action was a Milford police officer—states that on July 30, 2006, he was off-duty. He received a tip on his personal cell phone from an informant, whom Officer Rahn states he had known for over six years and who had assisted him on multiple occasions, that the informant had just been in a black BMW and that the BMW's operator was in possession of stolen jewelry. The informant stated that the driver was headed to the Pilot Travel Center in Milford, Connecticut—an area known for narcotics and prostitution—to "make a little money." Defs.' Mot. for Summ. J. [doc. # 128-4] Ex. A ¶ 4 (Rahn Aff.). Officer Rahn called the Milford Police Department dispatcher and reported this information. The dispatcher allegedly told him that there were no police vehicles available in the area at that time. In a later conversation with the dispatcher, Officer Rahn states that the informant "knew definitely that there was a [lot] of drugs, a lot of money, and, and stolen jewelry" in the car. Pl.'s Mot. for Summ. J. [doc. # 130-2] Ex. A.

In his responsive statement of facts, Mr. Salatto disputes both that Officer Rahn received a tip and that the Pilot Travel Center is an area known for narcotics and prostitution. *See* Pl.'s Resp. [doc. # 134] at 23 (Rule 56(a)2 Statement of Material Facts). With regard to the latter, Mr. Salatto highlights the fact that in the six months prior to the events in question, there were only two prior incidents at the Pilot Travel Center involving Officer Broderick. *See* Pl.'s Mot. for Summ. J. [doc.

---

Despite Mr. Salatto's lapse, the Court does not deny Mr. Salatto's motion for summary judgment for failure to comply with the Local Rules. Instead, the Court considers the facts presented, as supported by exhibits attached to all motions.

# 130-2] Ex. H.

According to Officer Rahn's affidavit, at approximately 5:00 p.m. that afternoon, he was at the Pilot Travel Center purchasing gas for his private vehicle. He noticed a black BMW that matched the informant's description parked in the Wendy's parking lot in the Pilot Travel Center. Officer Rahn noticed a woman, whom he recognized from his prior experience as someone who had been arrested for prostitution and warned to stay off of Pilot Travel Center property, walking towards the BMW.[2] According to his affidavit, Officer Rahn then called the Milford Police Department to inform them of the vehicle matching the informant's description. In the partial transcript of the call, Officer Rahn asked the dispatcher to send an on-duty police officer over to investigate and to run the plate, and he stated that "someone just gave me a call on something." Pl.'s Mot. for Summ. J. [doc. # 130-2] Ex. B. Officer Rahn also noted that there was supposed to be "crack and heroin in the car." *Id.* The dispatcher informed Officer Rahn that the car was "negative all the way around," *id.*, and dispatched Officer McCullum to the scene to investigate further.

Mr. Salatto, the driver of the BMW, maintains in his affidavit that he was parked in the Wendy's parking lot because he had purchased a beverage while waiting for the woman, whom he had driven to the area so that she could meet an acquaintance. *See* Pl.'s Mot. for Summ. J. [doc. # 130] at 1-2 (citing Pl.'s Mot. for Summ. J. [doc. # 130-2] Ex. A (noting that the BMW's driver had walked into the Wendy's)). Mr. Salatto maintains that Officer Rahn was only coincidentally nearby, *see* Pl.'s Mot. for Summ. J. [doc. # 130] at 2, and that Officer Rahn only learned of the woman's history after Mr. Salatto's arrest, *see* Pl.'s Resp. [doc. # 134] at 23 (Rule 56(a)2 Statement of Material Facts).

---

[2] In response to a written interrogatory, Officer Rahn noted that he recognized the woman "from pictures kept at the Milford Police Department of all known people previously arrested for prostitution." Pl.'s Mot. for Summ. J. [doc. # 130-3] Ex. Q.

As described in his affidavit, Officer Broderick was on plain clothes duty when he heard that a police officer was being dispatched to the Pilot Travel Center. As he was near the area, he called the dispatcher to say that he would investigate the BMW. On his way to the area, he spoke with Officer Rahn, who told him of the informer's tip and that the driver of the BMW was suspected of being in possession of stolen jewelry and engaging in prostitution. Upon arriving at the Pilot Travel Center, Officer Broderick parked his unmarked police vehicle behind the BMW, so that it was unable to drive away. He activated his lights, exited the car, approached the BMW, displayed his badge, and identified himself as a police officer.

Before he reached the BMW's door, Officer Broderick saw the rear lights activate. He commanded the driver to stop the vehicle and again identified himself as a police officer. The BMW's driver drove in reverse towards him, which Officer Broderick interpreted as an attempt to back into him. As there were approximately two feet between the BMW and Officer Broderick's car, he pushed the BMW to avoid being crushed. The BMW drove around towards the Wendy's drive-thru, then over the curb and onto Woodmont Road toward I-95 North. Officer Broderick pursued the BMW in his unmarked car.

In the subsequent transcription between Officer Broderick and dispatch, Officer Broderick states, "He's taking off on me. . . . Okay, he just tried to ram me. He just tried to ram me. He just. . . . Be advised. I walked up to him, he tried to back into me and run me over." Pl.'s Mot. for Summ. J. [doc. # 130-2] Ex. C. Officer Broderick's affidavit's description of the events is substantially identical to his Reporting Officer Narrative. *See* Pl.'s Mot. for Summ. J. [doc. # 130-2] Ex. E. The only two significant differences are that, in the Reporting Officer Narrative, Officer Broderick (1) does not mention Officer Rahn's tip and (2) notes that he attempted, and failed, to break the passenger side window with his flashlight when the driver ignored his commands to stop the

6

vehicle. *See id.* The affidavit description is also substantially similar to Officer Broderick's Probable Cause Statement. *See* Pl.'s Mot. for Summ. J. [doc. # 130-2] Ex. G. In a transcript of a later conversation between the dispatcher and Officer Rahn, Officer Rahn describes the events as follows: "So I saw, Dennis pulls in, and block, you know, pulls behind the guy and gets out and the [expletive deleted] dude throws it in reverse and almost waffles Dennis. . . . And then he drives, he's got nowhere to go, he [expletive deleted] jumped the, the drive-thru line, drove over the curb, as I was running over to help Dennis and he comes right up the drive-thru toward me." Pl.'s Mot. for Summ. J. [doc. # 130-2] Ex. A.

Mr. Salatto disputes that Officer Broderick was, at any time, in fear of being struck by the BMW; that he, the BMW's driver, ever attempted to or did strike Officer Broderick; or that Officer Broderick ever came into contact with the BMW. *See* Pl.'s Resp. [doc. # 134] at 23-24 (Rule 56(a)2 Statement of Material Facts).

As described in his affidavit, Officer McCollum states that he was on duty, traveling in a marked police vehicle, and headed to the Pilot Travel Center as backup for Officer Broderick. As he was turning into the parking lot, the suspect BMW pulled out directly in front of him. He therefore began pursuing the BMW onto I-95 North, followed by Officer Broderick.

Also as described in his affidavit, Officer McCollum was driving on the driver's side of the BMW when the car swerved towards him, causing him to swerve onto the shoulder. Officer Broderick states in his affidavit, in the Probable Cause Statement, and in his Reporting Officer Narrative that he observed these maneuvers. Mr. Salatto does not contest these statements.

Officer Broderick states in his affidavit, Probable Cause Statement, and Reporting Officer Narrative that, while in pursuit, he observed the passenger throw an object out of the vehicle that was never recovered. The transcript of the officers' conversation during the pursuit reflects that

Officer Broderick said that the woman "just threw something out the window," Pl.'s Mot. for Summ. J. [doc. # 130-2] Ex. K, and the Milford Police Department later asked the West Haven Police Department for assistance in locating the alleged item. Mr. Salatto disputes that anything was thrown from the BMW, noting that the windows and sunroof were sealed shut due to mechanical problems. Officer Broderick then had a flat tire and discontinued his pursuit.

Officer McCollum's affidavit describes the pursuit as continuing into New Haven. As the cars were traveling eastbound on Saltonstall Avenue approaching the intersection with Poplar Street, the BMW changed lanes to the wrong side of the road to avoid stopped traffic. At that time, another vehicle pulled onto Saltonstall Avenue traveling westbound, blocking the BMW's path. To avoid the oncoming vehicle, the BMW swerved back in front of Officer McCollum's car and slammed on its breaks to avoid hitting the stopped traffic in front of it. Officer McCollum's car then struck the BMW, forcing him to discontinue the pursuit. The BMW drove away. As a result of the accident, Officer McCollum was taken to the Milford Hospital for treatment for a stiff and sore neck. Mr. Salatto does not contest these facts.

As described in Officer Broderick's Probable Cause Statement, Milford police officers apprehended the driver and woman on foot, and as described in his affidavit, Officer Broderick and another police officer went to where the driver was being held. Officer Broderick searched Mr. Salatto incident to his arrest and transported him to the Milford Police Department Headquarters for processing. Pursuant to the Milford Police Department's policy for processing evidence, Officer Broderick searched the BMW and, as noted in his affidavit and Probable Cause Statement, he found three hypodermic needles in the glove box, one plastic straw cut at the end on the center console, three metal push rods in the center console, and a glass marijuana pipe between the driver and passenger seat. Mr. Salatto states that no drug paraphernalia was in the vehicle on June 30,

8

2006, and implies that the discovered materials were related to his insulin dependence.

In his complaint, Mr. Salatto alleges that Officer Broderick conducted a "highly destructive" search of the BMW, "literally ripping rear seats from their bearings and tearing console panels from their mounts. Broderick cut bunches of wires and sabotaged the BMW's entire electrical, lighting, and breaking systems." Compl. [doc. # 3] ¶ 22. In an affidavit, Mr. Salatto states that none of the damage shown in photos of the BMW was present when the BMW was taken into custody, and Mr. Salatto recalls that "after my arrest on June 30, 2006, Officer Dennis Broderick stated, 'Where are the drugs . . . I "ripped apart" your BMW and couldn't find any.'" Pl.'s Addendum [doc. # 136] at 4 (Salatto Aff.). Officer Broderick states in his affidavit that he did not wreck any such damage.

At all times relevant to this action, TMC was the authorized Claims Administrator for the City. As described in the TMC President's affidavit, according to their contract, TMC would pursue subrogation claims on behalf of the City in exchange for a percentage of the amount recovered. All of the subrogation figures are generated by independent contractors; TMC does not evaluate the scope of the damages.

On August 8, 2006, TMC was notified by fax that the City intended to pursue a damage claim against Mr. Salatto arising out of the motor vehicle accident between Mr. Salatto and Officer McCollum. TMC received a copy of the police report and repair estimates for Officer McCollum's cruiser from J&A and Advanced Vinyl Graphics totaling $4,746.46. J&A later completed the estimated repairs and the City paid J&A for its services. On August 14, 2006, TMC sent a letter to the Connecticut Assistant State's Attorney explaining that the City intended to pursue a property damage claim against Mr. Salatto in the amount of $4,746.46.

On October 24, 2006, TMC sent Mr. Salatto a letter seeking restitution in the same amount.

Mr. Salatto responded via letters dated November 3, 2006 and November 28, 2006, requesting additional documentation. In a letter dated December 15, 2006, TMC informed Mr. Salatto that it had attempted to contact his representative, but that as it had failed to do so and was unclear as to whether Mr. Salatto was still represented by counsel, it was sending him copies of the repair bill and the relevant City of Milford Uniform Police Report.[3] *See* Defs.' Mot. for Summ. J. [doc. # 128-8] Ex. J (December 15, 2006 letter). After learning that Mr. Salatto had commenced a civil rights action against the City, TMC closed its subrogation file.

Mr. Salatto was charged with (1) criminal attempt to assault a police officer; (2) criminal attempt to commit assault in the first degree; (3) reckless endangerment in the first degree; (4) engaging police in pursuit; (5) reckless driving; (6) failure to obey officer's signal; (7) interfering with a police officer; (8) unsafe backing; (9) possession of drug paraphernalia; (10) misuse of a marker plate; (11) operation of an unregistered motor vehicle; and (12) operation without insurance.

On August 31, 2007, before Judge John F. Cronan in the Superior Court of Connecticut, Mr. Salatto pled guilty to engaging police in pursuit and reckless driving and, under protest but expressing an interest to move on with his life, Mr. Salatto made restitution to the City in the amount of $4,796.00. Kevin Russo, the Assistant State's Attorney for the State's Attorney's Office for the City of Milford, Connecticut, states in his affidavit that in exchange for the plea agreement, the State's Attorney's Office *nolled* the remaining charges. Defs.' Mot. for Summ. J. [doc. # 128] Ex. E ¶ 7 (Russo Aff.). Mr. Russo further states that the charges would not have been *nolled* if Mr.

---

[3] J&A's damage quote notes that there was damage to the cruiser's front bumper, front panels, front headlamps and side marker lamps, hood, fender, and front door. *See* Pl.'s Mot. for Summ. J. [doc. # 130-2] Ex. V. Mr. Salatto contests whether such extensive damage was possible, given the BMW's condition, but this dispute is not relevant to the federal claims.

Salatto had not pled guilty to engaging police in pursuit and reckless driving. *See id.* ¶ 8. Mr. Salatto was sentenced to a twenty-month term of incarceration, and the $50 discrepancy between what he paid and what he allegedly owed was returned to him.

In a July 2008 inspection of the BMW, technicians found that the BMW's brake lights, turn signals, windows, and sunroof were inoperative. They determined that the "most likely cause[e] is water intrusion." Pl.'s Mot. for Summ. J. [doc. # 130-3] Ex. O. The technicians also found that the right rear brake light assembly needed to be repaired due to water damage. *See id.*

### III.

As clarified in his motion for summary judgment, Mr. Salatto asserts the following federal law claims: that Officers Rahn and Broderick violated his Fourth Amendment rights because they lacked probable cause to stop his vehicle; that Mr. Salatto was falsely arrested and maliciously prosecuted because the majority of charges terminated in his favor; and that Mr. Salatto's right to due process was violated when the City refused to release his vehicle as ordered by the state court until Mr. Salatto paid towing fees. Defendants also construe the complaint to assert a federal claim of unreasonable search of Mr. Salatto's vehicle. Mr. Salatto and Defendants both seek summary judgment in their favor with regard to all federal claims.

### A.

Mr. Salatto argues that Officers Rahn and Broderick lacked probable cause to stop his vehicle. In support of this argument, Mr. Salatto notes that Officer Rahn did not personally observe any illegal activity and that, after running a search on the car, the dispatcher informed Officer Rahn that the BMW was "negative all the way around." Pl.'s Mot. for Summ. J. [doc. # 130-2] Ex. B. Mr. Salatto also argues that Officer Broderick had no notice of the tip or of the woman's history.

Probable cause, however, was not required. A police officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The "reasonable suspicion" standard is less demanding than that for "probable cause," and it "requires a showing considerably less than preponderance of the evidence." *Id.* The Fourth Amendment does require "at least a minimal level of objective justification for making the stop," *id.*, which means that "[t]he officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch"' of criminal activity," *id.* at 123-24 (quoting *Terry*, 392 U.S. at 27).

Reasonable suspicion may be based upon information from a confidential informant so long as the tip bears sufficient "indicia of reliability." *Adams v. Williams*, 407 U.S. 143, 147 (1972). In evaluating the information, the Court considers the totality of the circumstances:

> [I]nformants do not all fall into neat categories of *known* or *anonymous*. Instead, it is useful to think of known reliability and corroboration as a sliding scale. Where the informant is known from past practice to be reliable . . . no corroboration will be required to support reasonable suspicion. Where the informant is completely anonymous . . . a significant amount of corroboration will be required. However, when the informant is only partially known (i.e., her identity and reliability are not verified, but neither is she completely anonymous), a lesser degree of corroboration may be sufficient to establish reasonable suspicion.

*United States v. Elmore*, 482 F.3d 172, 181 (2d Cir. 2007) (emphasis in original).

Defendants have submitted evidence that Officer Rahn received information from a known informant that Mr. Salatto had contraband in his car and that Officer Rahn conveyed this information both to dispatch and to Officer Broderick. As evidenced by the various transcripts, Officer Rahn repeatedly mentioned having received this tip. The informant's tip was corroborated when Officer Rahn saw a car matching the informant's description at the place where the informant

said the car could be found.

Additionally, while "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime," context is relevant in a *Terry* analysis. *See Wardlow*, 528 U.S. at 124. Insofar as the Pilot Travel Center was known to be a hot spot for narcotics and prostitution—and Mr. Salatto fails to effectively counter Defendants' statements that it was—that fact bears on the question of whether Defendants had reasonable suspicion to search the BMW.

Even assuming, as Mr. Salatto maintains, that there was no tip, neither officer knew of the woman's criminal history, and that Mr. Salatto was doing nothing unlawful—even assuming, in other words, that both police officers lacked reasonable suspicion to stop him in the parking lot—Mr. Salatto's subsequent flight after Officer Broderick identified himself as a police officer was sufficient to create reasonable suspicion to justify a *Terry* stop. *See id.* (noting that unprovoked flight is a pertinent factor in determining reasonable suspicion); *United States v. Muhammad*, 463 F.3d 115, 122-23 (2d Cir. 2006) (same). Despite the parties' different characterizations of Mr. Salatto's reaction to Officer Broderick's self-identification, it is not contested that Mr. Salatto fled the scene, and a reasonable juror would find that the evidence supports the conclusion that the officers had reasonable suspicion to pursue and stop Mr. Salatto.

As "[a]n unreasonable order to stop does not violate the Fourth Amendment," and as "grounds for a stop may thus be based on events that occur after the order to stop is given," the Court finds that the *Terry* stop was justified. *United States v. Swindle*, 407 F.3d 562, 568 (2d Cir. 2005) (citing *California v. Hodari D.*, 499 U.S. 621, 629 (1991)). Accordingly, with regard to the issue of whether the police officers illegally stopped Mr. Salatto, Defendants' motion for summary judgment is granted and Mr. Salatto's motion for summary judgment is denied.

13

B.

Turning next to the questions of false arrest and malicious prosecution, Defendants argue that Mr. Salatto cannot prevail because all charges did not terminate in his favor. Mr. Salatto argues in response that he need show only that a majority of the charges terminated in his favor.

1.

To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff is required to show that "the defendant intentionally confined him without his consent and without justification." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quotation marks omitted). A determination that the Defendants had probable cause to arrest Mr. Salatto establishes a complete defense to a false arrest claim. *See, e.g.*, *Kilburn v. Vill. of Saranac Lake*, 413 F. App'x 362, 363 (2d Cir. 2011) (summary order) ("'The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under [state] law or under § 1983.'" (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citation and quotation marks omitted)).

As the Second Circuit recently clarified, the probable cause inquiry

> is an objective one that focuses on the facts available to the arresting officer at the time of the arrest. Probable cause exists when, based on the totality of circumstances, the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.

*Finigan v. Marshall*, 574 F.3d 57, 61-62 (2d Cir. 2009) (quotation marks and citations omitted);

14

*see also Brinegar v. United States*, 338 U.S. 160, 175-76 (1949). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Because the Court finds that there are no genuine disputes of material facts, the existence of probable cause is properly decided as a matter of law. *See Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007).

      This Court need not address the issue of whether the *nolled* charges affect Mr. Salatto's ability to bring a false arrest claim, as a reasonable juror would conclude that the Defendants had probable cause to arrest him. Even ignoring everything that occurred prior to Mr. Salatto's flight—the alleged tip regarding contraband, the woman's status, and Mr. Salatto's alleged attempt to intimidate or endanger Officer Broderick—Mr. Salatto's actions subsequent to his flight provided Defendants with probable cause to believe he was committing a crime. Mr. Salatto does not contest that he swerved into Officer McCollum's vehicle on I-95 North, forcing the officer onto the shoulder, or that his actions in attempt to evade Officer McCollum resulted in the collision between the BMW and police cruiser. Indeed, Mr. Salatto pled guilty to engaging police in pursuit and reckless driving. *See Carey v. Maloney*, 480 F. Supp. 2d 548 (D. Conn. 2007) (finding that a plaintiff's subsequent guilty plea and conviction for a lesser offense than that for which he was arrested was conclusive evidence of probable cause). Based on the evidence, a reasonable juror would find that Defendants reasonably concluded that Mr. Salatto had been committing a crime. *See Finigan*, 574 F.3d at 61-62. Because they had probable cause to arrest him, Defendants have a complete defense to his false and unreasonable arrest claim.

      Furthermore, even if the Court were in error in concluding that probable cause existed to arrest Mr. Salatto, the Defendants certainly had "arguable probable cause" to arrest him. Even if

15

the "facts supporting probable cause to arrest are ultimately found not to have existed," an officer may still be entitled to qualified immunity on the basis of "'arguable probable cause,' which requires that he or she show that it was objectively reasonable to believe that probable cause existed or that officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* at 61 (quotation marks and citation omitted).

For the reasons given above, a reasonable trier of fact would find that "it was objectively reasonable to believe that probable cause existed" to arrest Mr. Salatto, and the Defendants are therefore entitled to qualified immunity from Mr. Salatto's false arrest claim. *Finigan*, 574 F.3d at 61 (quotation marks omitted). Accordingly, Defendants' motion for summary judgment is granted and Mr. Salatto's motion for summary judgment is denied with regard to the false arrest claim.

2.

To prevail on his § 1983 claim for malicious prosecution, Mr. Salatto must both show a violation of his Fourth Amendment rights and establish the elements of malicious prosecution claims under state law. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). To establish a malicious prosecution claim under Connecticut law, Mr. Salatto must prove that Defendants initiated or continued criminal proceedings against Mr. Salatto, that the criminal proceeding terminated in Mr. Salatto's favor, that the defendants acted without probable cause, and that the defendants acted with malice. *See id.* at 195; *McHale v. W.B.S. Corp.*, 446 A.2d 815, 817 (Conn. 1982).

First, there is no evidence that Defendants initiated or procured criminal proceedings against Mr. Salatto. As this Court has had cause to observe before, "'[a]bsent a claim that the officers played more of an essential or influential role in seeking or procuring the indictment,

[plaintiff's] bare-bones assertions against them are insufficient to state a claim for malicious prosecution." *Simpson v. Denardo*, No. 3:02CV1471(MRK), 2004 WL 1737444, at \*9 (D. Conn. July. 29, 2004) (quoting *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 901 (7th Cir. 2001)) (original alterations omitted). Here, Mr. Salatto offers no evidence that the Defendants "exerted pressure on the prosecutors, submitted knowing misstatements to them or concealed evidence from them." *Kennedy v. Chamberland*, No. 3:07-CV-214 (RNC), 2010 WL 1286789, at \*6 (D. Conn. Mar. 30, 2010) (citing *Simpson*, 2004 WL 1737444, at \*9). Given the absence of such evidence, a reasonable juror could not find that Mr. Salatto satisfies the first element.

Mr. Salatto must also demonstrate that the criminal proceedings terminated in his favor. Under Connecticut law, a *nolle prosequi* "is a 'unilateral act by a prosecutor, which ends the pending proceedings without an acquittal and without placing the defendant in jeopardy.'" *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (quoting *Cislo v. City of Shelton*, 692 A.2d 1255, 1260 n.9 (Conn. 1997)). Connecticut has adopted a liberal interpretation of the favorable termination requirement to state a claim for malicious prosecution. *See id.* at 420-21 (citing *See v. Gosselin*, 133 Conn. 158 (1946)). It is not necessary that the plaintiff prove he was acquitted of the charges; rather, it is sufficient for him to show that the prosecution terminated under circumstances showing an abandonment of the prosecution. *Id.* (citing cases); *see also Russo v. City of Hartford*, 184 F. Supp. 2d 169, 186 (D. Conn. 2002) (observing that the Connecticut Supreme Court considered "the burden to establish the termination prong a minimal one, with little emphasis on whether the actual termination was favorable to the plaintiff"). However, if a *nolle* is entered as part of a plea bargain or other arrangement with a defendant, it will preclude a subsequent action for malicious prosecution. *See Roberts*, 582 F.3d at 421 (citing cases); *see also Holman v. Cascio*,

17

390 F. Supp. 2d 120, 123-24 (D. Conn. 2005) ("[T]he decisions hold that a nolle will preclude a subsequent case for malicious prosecution when it was made as part of a plea bargain or under other circumstances that indicate that the defendant received the nolle in exchange for providing something of benefit to the state or victim.").

Defendants have provided an affidavit from the prosecutor and a transcript of the criminal proceeding indicating that some of the charges were *nolled* in exchange for Mr. Salatto's guilty plea and payment of restitution, and the prosecutor stated that the *nolle* would not have entered in the absence of the plea arrangement. Mr. Salatto has presented no contradictory evidence. As a reasonable juror must conclude that Mr. Salatto only obtained his *nolle prosequi* because he entered a guilty plea to two charges and paid restitution for the damages to the police vehicle, he cannot satisfy the second element.

Turning to the third element, as discussed above, probable cause existed at the time Defendants arrested Mr. Salatto, defeating his claim for false arrest. However, probable cause to arrest is distinct from probable cause to believe that, in this case Mr. Salatto "could be successfully prosecuted. Only the latter kind of probable cause is at issue with respect to the malicious prosecution claim." *Posr v. Court Officer Shield 207*, 180 F.3d 409, 417 (2d Cir. 1999). As Mr. Salatto offers no evidence that Defendants lacked probable cause in initiating prosecution, a reasonable juror would find that he failed to satisfy this element.

Finally, Mr. Salatto does allege that at least Officer Broderick acted with malice. The Second Circuit defines malice as a "wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d. Cir. 1996) (quotation marks omitted). Mr. Salatto notes that Officer Broderick knew of should have known of his insulin dependence and therefore should not have charged him with possession of drug

paraphernalia. In an affidavit, Mr. Salatto recalls that "after my arrest on June 30, 2006, Officer Dennis Broderick stated, 'Where are the drugs . . . I "ripped apart" your BMW and couldn't find any.'" Pl.'s Addendum [doc. # 136] at 4 (Salatto Aff.). On this element, a reasonable juror might conclude that Officer Broderick, who had felt as though he had been threatened and knew that a colleague had been involved in an accident, might have acted with malice.

Mr. Salatto is not able to establish three of the required four elements for a malicious prosecution claim. As the lack of any one element would have been fatal, Defendants' motion for summary judgment is granted and Mr. Salatto's motion for summary judgment is denied with regard to the malicious prosecution claim.

## C.

Mr. Salatto alleges that Officer Broderick caused excessive damage to his BMW when he searched the vehicle, and Defendants have appropriately construed this statement as a Fourth Amendment claim for unreasonable search. As Mr. Salatto does not challenge Defendants' right to conduct an inventory search of his vehicle incident to arrest, for the purposes of this ruling, the Court assumes that a search was valid. *See, e.g.*, *United States v. Lopez*, 547 F.3d 364, 369 (2d Cir. 2008) (noting that an inventory search constitutes a well-defined exception to the Fourth Amendment's warrant requirement). The question, then, is whether the manner in which this search was conducted was appropriate.

Although officers executing search warrants and performing searches must, on occasion, damage property in order to perform their duty, "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the search itself was lawful." *See United States v. Ramirez*, 523 U.S. 65, 71 (1998); *see also Ochoa v. City of West*

*Haven*, No. 3:08cv24 (DJS), 2011 WL 3267705, at *6 (D. Conn. Jul. 25, 2011) (noting that the Fourth Amendment's reasonableness requirement "ensure[s] reasonableness in the manner and scope of searches and seizures that are carried out").

In his complaint, Mr. Salatto alleges that Officer Broderick conducted a "highly destructive" search of the BMW, "literally ripping rear seats from their bearings and tearing console panels from their mounts. Broderick cut bunches of wires and sabotaged the BMW's entire electrical, lighting, and breaking systems." Compl. [doc. # 3] ¶ 22. To support his allegations, Mr. Salatto has provided photographs of his car that he states were taken when the car was released from custody, *see* Pl.'s Addendum [doc. # 136], and a repair bill dated July 2008, *see* Pl.'s Mot. for Summ. J. [doc. # 130-3] Ex. O.

Ignoring at present the issue of authentication, the photographs Mr. Salatto provides do show that the rear seat and console panels were removed, but the July 2008 repair bill does not include any charges for repairs to console panels or the rear seats as would be expected if, as Mr. Salatto alleges, the console panels had been torn from their mounts or the rear seats removed in a manner that caused the track to be bent. There is one photograph that indicates that the fuel cover was "ripped off," Pl.'s Addendum [doc. # 136], but this alone is not sufficient to state a claim for a constitutional tort. It is not clear from the photograph that the fuel cover was actually ripped off; instead, the side of the vehicle appears to have been generally damaged. As Mr. Salatto does not claim that this damage to the side of the car was due to Defendants' actions, it presumably existed prior to the car being taken into custody. It may even be the result of the collision with Officer McCollum's vehicle.

The July 2008 repair bill does not support Mr. Salatto's contention that Officer Broderick destroyed the electrical system in the BMW in June 2006. Mr. Salatto claims that the repair bill

shows that someone performed an "in-line splice" of the electrical wiring. *See* Pl.'s Addendum [doc. # 136] at 2. The repair bill, however, determined that "most likely cause[e] [of the electrical problems] is water intrusion." Pl.'s Mot. for Summ. J. [doc. # 130-3] Ex. O. The bill also includes repair costs for the electrical connections for the windows and sunroof, items Mr. Salatto states were inoperative on the day of the incident. *See* Pl.'s Mot. for Summ. J. [doc. # 130] at 21-22.

### D.

Mr. Salatto also alleges that the City violated his right to due process by requiring him to pay towing fees before releasing his vehicle. To prevail on a claim for denial of procedural due process, Mr. Salatto must show that he was deprived of a protected property interest by government action without being afforded adequate process. *See Goldberg v. Kelly*, 397 U.S. 254 (1970). In considering procedural due process claims, courts distinguish between "claims based on established state procedures" and those "based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). Where a plaintiff's deprivation occurred as a result of an established state procedure, due process liability may attach when the plaintiff is denied pre-deprivation hearings. *See Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990). Where the acts are random and unauthorized, pre-deprivation hearings are not required, "since the [government] cannot know when such deprivations will occur." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

First, Mr. Salatto cannot claim that he is entitled to a pre-deprivation proceeding, as he fails to demonstrate that the requirement that he pay towing fees before his vehicle is released is a claim based on an established state procedure. The only evidence Mr. Salatto offers in support of his allegation is an unsigned notice from the Milford Police Department including a statement

requiring payment of towing fees prior to the release of his BMW. *See* Pl.'s Mot. for Summ. J. [doc. # 130-4] Ex. BB. He provides no evidence, however, that this requirement was imposed in any other case and does not submit any memorandum or policy statement from the City adopting this requirement in all cases. Mr. Salatto's conclusory and unsupported allegation is insufficient to support a claim for violation of due process. *See Butler*, 896 F.2d at 700 ("A conclusory allegation of a pattern of [municipal conduct], without evidentiary support or allegations of particularized incidents, does not state a valid claim"). The non-release of a vehicle might well be government policy, but Mr. Salatto fails to show that such a policy exists.

Even had Mr. Salatto demonstrated that there was an established policy of non-release of vehicles until after the towing fee is paid—as there most likely is—Mr. Salatto had both pre- and post-deprivation remedies available. If he thought that the City was not complying with the court order in his criminal case to release his vehicle, Mr. Salatto could have sought relief by filing a motion in state court before paying the fee. *See* Conn. Gen. Stat. § 54-36a (describing the procedure for return of seized property at the conclusion of a criminal proceeding and making no reference to prepayment of towing or storage fees). Alternatively, Mr. Salatto could have filed a civil action. *See Crisanti v. Dumas*, No. 3:02CV1544 (RNC), 2004 WL 178606, at *1 (D. Conn. Jan. 22, 2004) (noting that, where state police refused to return motorcycle despite court order to do so, plaintiff could file civil action in state court or claim with Claims Commissioner and therefore plaintiff's due process rights were not violated). Mr. Salatto does not allege that either of these remedies were unavailable or inadequate.

Furthermore, the Court does not find that Mr. Salatto was due any additional pre-deprivation process, especially in the absence of evidence that a post-deprivation hearing would have only occurred after an unreasonable amount of time had passed. To determine whether

Mr. Salatto received the process he was due under the Constitution, the Court considers three factors:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail."

*City of Los Angeles v. David*, 538 U.S. 715, 716 (2003) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)) (holding that a policy of requiring car owners to pay impound and towing fees, then wait 30 days to contest the fees, did not violate the Due Process Clause).

First, Mr. Salatto's property interest is a monetary one: namely, his desire to retain his funds and pay the towing fees only after a determination that the fees are properly owed. The Court does not consider this interest a serious harm. *See id.* (finding that the private interest in maintaining the use of money between the time of paying towing fees and the time of a post-deprivation hearing minimal and mitigated by the possibility of interest payments). Second, the potential for delay in presenting evidence is unlikely to result in errors. *See id.* (comparing the amount of time before a civil trial was held and the amount of time before a post-deprivation hearing might occur). Finally, the government has a "considerable interest" in imposing the cost of towing and storage fees on the owner of the vehicle and in retaining possession of the vehicle until the fees are paid. *See id.* (discussing the administrative necessity of avoiding pre-deprivation hearings for such property deprivations); *see also DeYoung v. City of New York*, 607 F. Supp. 1040, 1044-45 (S.D.N.Y. 1985) (finding that New York's practice of requiring payment of towing and storage charges prior to any adjudication of guilt on parking violation did not violate due

23

process).

Defendants' motion for summary judgment is granted and Mr. Salatto's motion for summary judgment is denied with regard to the due process claim.

E.

This Court has recently reviewed the standards necessary to state a *Monell* or failure to train claim under § 1983. *See Servin v. Anderson*, No. 3:11cv539 (MRK), 2012 WL 171330, at *6 (D. Conn. Jan. 20, 2012). As this claim is not a focus of Mr. Salatto's complaint, the Court refers readers to its earlier discussion rather than reiterate the law in detail here.

Suffice it to say that, to state a failure to train claim, a plaintiff must allege that he or she suffered because an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). As a reasonable juror would not find that Mr. Salatto suffered a constitutional tort, or that such a tort was suffered as a result of an established policy, he cannot state a claim for § 1983 liability against the City or Chief Mello.

Municipal sins of omission are considered policies in certain limited circumstances involving failures to train. *See Connick v. Thompson*, --- U.S.---, 131 S. Ct. 1350, 1359 (2011). Mr. Salatto alleged that the City and Chief Mello were placed on notice of Officer Broderick's "deviant propensities" through "dozens of citizen complaints and state and federal lawsuits against him, yet they failed to train, retrain, or supervise him" adequately. Compl. [doc. # 3] ¶ 26. However, Mr. Salatto offers no evidence of the relevant types of training or supervision police officers receive or why those procedures are inadequate for preventing foreseeable constitutional torts. As a result, Mr. Salatto fails to satisfy the fundamental requirements of a failure to train claim. *See Nicholson*

24

*v. Scoppetta*, 344 F.3d 154, 166 (2d Cir. 2003) (discussing the necessary elements of a failure to train case). Nor does Mr. Salatto's unsupported allegations regarding Officer Broderick establish a failure to train claim. *See City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

Defendants' motion for summary judgment is granted and Mr. Salatto's motion for summary judgment is denied with regard to any *Monell* or failure to train claim.

### F.

Finally, Mr. Salatto alleges generally that Officers Rahn and Broderick conspired to violate his constitutional rights. To state a *prima facie* case for a § 1983 conspiracy, Mr. Salatto must demonstrate that there was "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). The Second Circuit has consistently held that a claim of conspiracy to violate civil rights requires more than general allegations; expansive allegations must be supported by specific instances of misconduct. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." (quotation marks omitted)). As Mr. Salatto offers only "conclusory, vague, or general allegations" that Defendants have conspired against him, unsupported by any evidence of such a conspiracy, Mr. Salatto's § 1983 conspiracy claim fails.

### IV.

25

J&A moves for summary judgment with regard to Mr. Salatto's claims on the ground that it is not a state actor. To maintain a cause of action under 42 U.S.C. § 1983, Mr. Salatto must show that he suffered a violation of a constitutional right and that the violation was committed under color of state law. *See* 42 U.S.C. § 1983. Traditionally, a defendant must have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law" to perform the conduct alleged to constitute state action under 42 U.S.C. § 1983. *West v. Atkins*, 487 U.S. 42, 49 (1988) (quotation marks omitted). The existence of a contractual relationship, alone, does not render a private contractor's conduct state action. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) ("Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.").

J&A, an auto body shop, repaired a police vehicle, submitted a bill for services performed, and was paid by the City. J&A did not seek payment from Mr. Salatto for the repairs, and Mr. Salatto presents no evidence to show that J&A was aware that the City intended to seek restitution from Mr. Salatto. The fact that J&A repaired a police vehicle does not establish that J&A was clothed with the authority of state law or acting pursuant to state law.

In addition, Mr. Salatto alleges no facts supporting his conclusion that the charges were inflated. Even if the charges were excessive, he has no constitutionally protected right to have the City pay a lesser amount. Thus, even if he could show that J&A was a state actor, Mr. Salatto alleges no fact suggesting that any action taken by J&A violated his constitutionally protected rights.

Finally, Mr. Salatto alleges that J&A conspired with the City to violate his rights. But as all

26

federal law claims against the City have been dismissed, the conspiracy claim against J&A must be dismissed as well. *See Roesch v. Otarola*, 980 F.2d 850, 854-55 (2d Cir. 1992) (affirming dismissal of claim that non-state defendants conspired with state official where all § 1983 claims against state official were dismissed).

In opposition to J&A's motion for summary judgment, Mr. Salatto notes that he brings his claims against J&A under the Court's pendent party jurisdiction, *see* Pl.'s Resp. [doc. # 133] at 1, thereby essentially conceding that J&A is not a state actor. However, Mr. Salatto argues that J&A's motion should not be granted on the basis that his claims against J&A are intertwined with those against the other Defendants. As the Court has dismissed Mr. Salatto's federal law claims, and as Mr. Salatto cannot state a § 1983 claim against J&A, J&A's motion for summary judgment is granted with regard to Mr. Salatto's federal law claims.

## V.

Mr. Salatto includes many state law claims in his complaint and asks the court to exercise supplemental jurisdiction over those claims. Where no federal claims remain in a lawsuit, however, the district court may decline to exercise supplemental jurisdiction and leave the state law claims to be considered by the state courts. *See* 28 U.S.C. § 1367(c)(3) (noting that a district court may decline to exercise supplemental jurisdiction over state law claims where all federal claims have been dismissed); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases). As the Court has granted summary judgment in favor of Defendants or dismissed all of Mr. Salatto's federal claims, it declines to exercise supplemental jurisdiction over the remaining state law claims. Mr. Salatto remains free to raise his state law claims against all defendants in the Connecticut Superior Court.

**VI.**

The motions for summary judgment filed by J&A [doc. # 129] and the City, Officer Rahn, Officer Broderick, Officer McCollum, Chief Mello, and TMC [doc. # 128] are GRANTED as to the federal law claims; Mr. Salatto's motion for summary judgment [doc. # 130] IS DENIED as to the federal claims; and all of Mr. Salatto's federal claims are therefore DISMISSED. The Court declines to exercise supplemental jurisdiction over Mr. Salatto's state law claims. **The Clerk is directed to enter judgment in favor of Defendants and close this case.**

IT IS SO ORDERED.

/s/    Mark R. Kravitz
       United States District Judge

Dated at New Haven, Connecticut: March 7, 2012.